Case number 24-1855. Ibrahim Alzandani et al. v. Hamtramck Public Schools et al. Argument not to exceed 15 minutes per side. Mr. Giovannotti, you may proceed for the appellant. Good morning. May it please the court, Neil Giovannotti on behalf of Appellant the Michigan Department of Education. Your honors, I've reserved three minutes for rebuttal. This case is about the limited circumstances in which Congress can validly abrogate state's 11th Amendment immunity. For the last 30 years, the Supreme Court and this court have repeatedly found that there are only limited instances in which Congress can abrogate such immunity, and this case does not present such circumstances. The trial court's decision should be reversed for two key reasons. First, the district court failed to engage in the three-part test articulated in the United States v. Georgia, which is required when assessing congressional abrogation on a claim-by-claim basis for Title II claims under the ADA. The second reason, your honors, is that applying that three-part test, the plaintiffs in this case would fail at each prong. Going to the first one, under Michigan law, most states put under their state constitutions the states in charge of the education system. Does Michigan have one of those clauses, like their own efficient clause or free and public education clause? There is a general provision related to education as a right within Michigan. However, it's a local control state where the local districts are the direct provider of services. MDE, the defendant in this case, or relevant to this appeal at least, is kind of an overseer of the education system but is not the direct provider of services. But I mean, those school funding cases teach that states can be on the hook for underfunding, for example. Your honor, I'm not sure what you're referring to in terms of school funding cases. Well, I think partly because Michigan doesn't have one of them. So that makes perfect sense. But most states, Ohio, your southern neighbor, have these cases where the state Supreme Courts have said the state is ultimately responsible for, quote, the adequacy of the system. And you're telling me that in Michigan that's just not true. Your honor, I don't know if I'm necessarily making that point. However, I'm also not sure that that would be relevant to the analysis before the court here, where the Supreme Court and this court have laid out a clear standard for when 11th Amendment is abrogation under federal law. The fact that the state may have some role over education does not necessarily mean that 11th Amendment immunity is abrogated. It's provided right in the 11th Amendment. There's only limited circumstances, specifically for Title II claims, which is relevant here, in which that immunity is abrogated. I mean, the school districts are sued. That makes sense. But that's not in front of us. I mean, the facts of this case show the state had a role, right? I mean, under federal law, the states, I mean, it was helpful to the plaintiffs, ultimately, what the state did. But doesn't that show the state has a role here? We don't dispute that the state holds some role within the special education context. The IDEA, the federal statute that provides for special education, puts a specific role or assigns a specific role to the state education agency. And MDE fulfilled that role for the facts of this case. But again, that role is distinct from whether they have waived or, I'm sorry, whether 11th Amendment immunity is abrogated for purposes of the Title II claim before this court. There's an entirely separate proceeding, which we have sought interlocutory appeal of whether the plaintiffs have stated a claim under the IDEA against the SEA. That is currently in a petition pending before this court in a separate docket number. But for purposes of this appeal that we're here today, it's solely focused on whether immunity is abrogated for the Title II claim against MDE. It's a very narrow appeal, very narrow issue before the court on that point. But Michigan Law Council, I mean, correct me if I'm wrong, does give the state, I mean, Michigan statutes gives the state supervisory control. Is that fair to say? And over special education programs says that the state can issue rules about curriculum and eligibility and things like that? In the broad sense, yes. And the IDEA also requires the state education agency to issue such rules that would govern special education for the state. And here there's at least allegations that the state knew about the alleged conduct by the districts. So why isn't that enough? So, Your Honor, that question would go to whether they stated a claim under the IDEA, which again, is subject to that separate petition that we've filed. It would not go to whether the, for purposes of the Title II claim, immunity has been abrogated. Because again, what that's focused on- But isn't, maybe I'm just not following your argument. So we're not talking about the IDEA. We're talking about the ADA. Correct. Isn't step one under the Georgia test, whether there's a violation of Title II? Correct, Your Honor. Okay. So you keep saying abrogation, and I understand it's ultimately about that, but our questions are about Title II and whether the state supervisory responsibility makes them potentially liable. Now, if they are potentially liable, it's true. You can then go to the other tests, right? Does this go beyond the 14th Amendment, et cetera? But the first argument is whether there's actually a claim against the state under Title II. Correct, Your Honor. And we've, as we've argued in the briefing, there isn't- So what's your answer to his question about supervisory responsibility as to Title II? We're not talking about IDEA. We're purely on this appeal. What's your answer to that point? So, Your Honor, Title II does not provide for supervisory authority over the public education system. The IDEA does. That's why I apologized if I was leading us towards a different question. And there's no allegations in this case that MDE, the state education agency, discriminated against these children specifically because they were disabled. In fact, the pleadings demonstrate that they took a number of proactive steps to address the failures of the local school district, Hamtramck Public Schools, which the allegations include. And MDE ultimately found through a state investigation complaint that the Hamtramck Public Schools did not provide for a free appropriate public education. The only specific allegation against MDE regarding a failure is they allege that after MDE took a state complaint from one of the three plaintiffs, did an investigation, found that Hamtramck Public Schools had not offered a free appropriate public education, and then issued corrective action to the local districts, plaintiffs claimed that MDE did not follow through on that corrective action plan. That single allegation cannot form the basis of a Title II claim because there's no allegations that MDE didn't take that action specifically because the children at issue are disabled. The argument, counsel, sorry to interrupt, is basically that the state did what it should have done in response to this complaint, but that the district dropped the ball, allegedly. Correct, your honor, correct. If the facts, you can see kind of what we're trying to work out, if the facts were a little different and the state, you know, brushed aside the complaint in the first instance and said, yes, we have the ability to set special education rules and curriculum rules, eligibility rules, require teachers to stay later with special education students, and then the state said, you know what, we're not gonna intervene, we're not gonna do anything to tell the school districts to fix this, it would be a different case? That would definitely be a different case. We'd have problems under IDEA and Title II potentially in that circumstances, but that's not the facts of the case here where, again, the sole allegation against MDE is they did not follow up on the corrective action plan. There isn't allegations, for example, that MDE did follow up on allegations or a corrective action plan issued to a district to address failures related to an able-bodied student and that they didn't do so in this instance for a disabled student, so there's no actual allegation of discrimination. It's just, frankly, plaintiff wished MDE would have done a little bit more in following up, and of course, we're at the 12B stage, so we would dispute that MDE didn't actually follow up on the corrective action plan, but for purposes of what we're here today, on the 12B standard, we're accepting the facts as pled. I want to make sure I address, so this court doesn't need to go beyond that first prong, whether there's a valid Title II claim at issue here. In fact... Can I ask a question? I don't know if you have Footnote 5 in your brief. I apologize, Your Honor, I don't remember the details of Footnote 5. Footnote 5 says, recognizing the court's limited jurisdiction for this appeal, MDE does not directly contest the district court's holding that plaintiff stated an ADA claim and does not seek reversal of that holding. That was a little off-putting as we, at least I, was reviewing this case. Right, so for the first prong, which is, is there a valid Title II claim at issue here, there was two different findings in the district court's decision. There's a finding that the plaintiffs had pled a Title II claim, and then there's a totally separate finding that says 11th Amendment immunity has been abrogated for purposes of the Title II claim. Because of the limited scope of interlocutory appeal, or issues that can be immediately appealed to this court, we can appeal an immunity issue, we can't appeal a pleading decision by a district court. But what if they're exactly the same inquiry? So this court can certainly review under a de novo standard whether immunity is appropriate, and the fact that one of those prongs happens to mirror the same analysis that the district court did on a basically a 12b6 standard, it does not mean that the court is unable to address whether immunity is abrogated. And accordingly, that issue is directly before the court. But if you're saying we don't need to go beyond the first step, which is whether there's even a claim stated, it seems like there might be a little bit of confusion here. I understand that it could be read as disconnected, but again... Is it just the distinction between 12b1 and 12b6? Yes, Your Honor. We're contesting the immunity issue, which is a 12b1, the court can review that de novo right now through an interlocutory appeal. The court does not have jurisdiction unless, of course, the court takes a petition. Another way of phrasing this footnote is we accept that we can't review the merits, the plausibility of the ADA claim under 12b6, but we can review it under 12b1, comma, even though they're exactly the same inquiry. Yes, Your Honor. And I recognize... Then you'll be a little more careful on how you frame your footnotes, right? I will do so. Thank you. Thank you. Spent a little time trying to figure out what you meant there. Okay. And I appreciate that, Your Honor. I do want to jump... Again, the court doesn't need to get past prong one from our perspective. Prong two, I think we've... Jump quickly. The yellow light's on. Yes. I want to make sure we jump to the third prong, because that's the focus of the district court's decision in the briefing by the plaintiffs, which rely on the first, the third, and the fourth circuit cases, which are in the context of a university, not K-12, which is at issue here. The first, third, and the fourth circuit decisions that are cited, they shouldn't guide this court's decision for three reasons. One, this court has the benefit of the Popovich decision, the en banc decision from the Sixth Circuit from 2002, which makes very clear claim... Title II claims that sound and equal protection cannot give rise to... Do not abrogate immunity. And that's exactly the situation we have here. Very, very briefly, if I can, on the two second points. I know my time has expired. One is that because it's a university, the universities are direct providers of service. Therefore, analogous to the local district in this case, not MDE, who's two steps removed. And then the last point, Your Honor, is the... The IDEA is the prophylactic measure that was within Congress's powers to remedy the history of discrimination in the K-12 context. Thank you. All right. Thank you very much. From the other side. Good morning. Good morning. Kasim Dakhlala on behalf of the plaintiffs' appellees in this case. Now, Your Honors, you asked a question. If the facts were different, if the state brushed aside the requirement to oversee, would the result be different than what the appellants are arguing for? But in fact, the First Amendment complaint in excruciating detail actually makes those allegations and references, as the Court has alluded to, specific complaints that were made by the plaintiffs that worked their way through the system and eventually got to the Michigan Department of Education for a decision. Just to make sure I'm getting it, because maybe I did this too quickly. I thought when it comes to Title II, each time the state got involved, they helped your clients. So each time they got involved, they made statements that seemed to be helpful to our clients, but they didn't actually help anybody. So they're acting pursuant to state law, federal law, and we argue under Title II, they're acting in their supervisory capacity, at least outwardly. But then when it comes to actually making corrections, and we've alleged this in the complaint, they fail in that role. They're not actually performing their function. And that's the entire point of the ADA and Title II. And as the... I'm sorry, just to pick up on that point, counsel. The state issued this remedial plan. What else should the state have done to avoid liability? Well, they have an obligation to actually follow through on the supervision to ensure that the recommendations that they make are not just recommendations, they're dictates. Specifically, that looks like repeated communications to the school district to make sure it's happening, or like a weekly check-in. What does it look like specifically? Sure, a diligent supervisor of anything has to follow through to make sure that the subordinate is doing what they're supposed to. There's no indication that that happened here, and that was specifically pled. There was nothing. There was no effort by the Department of Education to do anything to ensure that the statements that are made in the report don't amount to just an advisory opinion, but they are actually requirements that the district and the intermediary, Wayne Resa, had to follow. Now, there are also allegations in the First Amendment complaint, which Michigan Department of Education would have certainly known about in assessing whether there was any actual effort by the district to comply with the obligations under Title II. In that, there were statements made publicly at school board meetings by Hamtramck Public Schools indicating, admitting, that they're not providing special education services as a matter of policy. And the reason that they stated for that was a lack of funding. Well, a lack of funding is not an excuse. It's not an excuse for Hamtramck, and it's certainly not an excuse for the Michigan Department of Education, since they have the funding obligation. Now, last year's budget of the Michigan Department of Education for public schools is over $50 billion, and it appears readily apparent, given that Hamtramck Public Schools is stating publicly, openly, that they don't have funding for their special education programs to even do anything beyond, and this is what they're actually doing, do anything beyond having... Law doesn't bar them from increasing their funding. Excuse me? State law doesn't bar them from increasing their funding at the local level, trying to obtain more resources at the local level. Certainly, they don't have them. They look to the Michigan Department of Education, they make the... I'm making a different point. Sure. State law isn't tying their hands, is the point I'm making. I mean, if the local school district doesn't have enough resources, can't they have a new levy, an income tax, whatever? They certainly... State law lets them do that. They certainly could. That is one potential... Why is it the state responsibility is what I'm trying to figure out. Because the state assumes that responsibility. The state provides funding for special education. They're supposed to provide adequate funding for special education, and they fail to do that. The money is just not made available, even in the face of specific complaints that are made by students within a district that highlight the fact that it's lack of funding that is preventing services from being provided appropriately. Now, I don't see a difference... I thought Michigan was one of these states where it was local control. You're not a state where the state was held responsible for general funding, whether special education or everything else. That's not Michigan. Michigan does, however, provide funding to the local school districts from the state for specific services like special education. In this case, they failed to provide adequate funding for the services. When I'm saying services, I mean, as set forth in the First Amendment complaint, Hamtramck had a policy of keeping kids who require special education services on half days or no days as a matter of policy. They're not even in school. Maybe another way to get at this or think through it is if you look at the words of Title II, I take it you would agree the school district is a public entity providing these services, right? So at a minimum, the school district is a relevant entity under Title II, right? That is correct. Okay. Let's put to the side for a second funding. What else would you say the state through the department is a public entity providing the service? Just put funding to the side. I just want to know if there's other features of this where you would say it was the state providing the service. It's a supervisory authority. It's a supervisory authority and function that they had to actually, when... Even without... And what's the time where they were said, why are you not regulating the school district and making sure they comply with their obligation? Again, putting funding to the side. What's the specific allegation as to the department? Even under supervisory, let's assume that's legit. Sure. What is the specific thing they didn't do as a public entity providing a service? Sure. So again, in the failure to follow their own procedures in follow-up when complaints are made, okay, there's allegations that complaints were made and that they didn't do anything to remedy their own findings in relation to those complaints, and a dereliction of any general supervisory function in order to ensure that there is a functioning special education program within Hamtramck Public Schools. This is all pled in the complaint as it relates to Michigan Department of Education. Now, there's a distinction that is somehow drawn by the department in this case as it relates to whether Title II provides any kind of rights in higher education versus primary education. And there are various circuits, as the court is aware, that have found them in the context of higher education. Why do we need to talk about that? Well, because the argument is that there... The Title II point. Sure. So the argument is that there isn't 11th Amendment abrogation as it relates to primary schools. That's what the MDE is arguing. And I see no reason for that. I see no logic as to why 11th Amendment would be abrogated as it relates to upper education and as the various circuits have found in that context, and why it shouldn't be abrogated in the context of primary education. Because it's the University of Michigan, not the University of Ann Arbor. Understood. I understand that point. But really, we're getting to the core function of government. And that is the provision of an education in each context. Well, in the context of upper education, what makes that function different than the provision of education in the primary school context? Why should that be a basis for drawing a line as to whether 11th Amendment immunity is abrogated or not? But I mean, there's one... There is one state that... The state's in charge of the local schools. That's Hawaii. Everyone else delegates it to local public schools. And that's just not how the university system works. I mean, for most schools, they are state universities. And this... I think we're all in agreement. You can delegate to agencies, you can delegate to local school districts. Sure. And the state here has retained a supervisory function that it's simply not following. And that was alleged in the complaint. Part of what I'm struggling with, counsel, is... I mean, we have some tough questions, as Chief Judge Sutton was just referencing, at the third prong of the Georgia test. And correct me if I'm wrong, but the district court didn't really invoke the Georgia test at all. Is that correct? So the district court focused on the third prong of the Georgia test and found abrogation. And on that basis, the district court said that it didn't need to go further than that as it relates to whether Title II was applicable and gave the plaintiffs a cause of action for damages against the state. It didn't cite Georgia, though, did it? I don't believe so. So why wouldn't we just, at a minimum, look... I mean, we're here trying to figure this out in the first instance. Look to maybe send it back for at least that reason. Well, I mean, I think if you rule in favor of the plaintiffs on abrogation, and certainly we've... Under de novo review, we've pled all of the facts that would allow you to do that, then there isn't a need for further proceedings to ensure that a technical statement of the Georgia test was made in any opinion. You could just find that it did comply. Do you agree we should apply Georgia here? Yes, I do. All right. I think we understand your argument. All right. If I may, I'd like to request three minutes for rebuttal. I haven't even used all my time. Well, we don't usually do it that way. If you want to keep talking, go for it. But now's your time. I mean, you guys know... I mean, sorry. Your honors, you all know there is a majority of circuits that have found abrogation in the higher education setting. There are a couple of circuits that are neutral or declined to pass on the question. And then there's a couple of circuits that have decided that abrogation doesn't apply. The Sixth Circuit should join the circuits that have found abrogation to apply, particularly because in the context of the facts before you, as Judge Sutton, as you stated, this set of facts is more akin to... We can keep talking. When you use the phrase supervisory authority, supervisory liability, how is that distinct from vicarious liability? Well, it's because it's a... Is it the same concept? Well, it's a direct obligation. Vicarious liability is... My employee goes off on a frolicking detour, and I don't know what they were doing when they're on their lunch break. Here, the state has a specific role in maintaining supervision. So Title II does not impose vicarious liability on the state? Well, it... I mean, it... I mean, I'm saying about Title II, not the facts of the case, like just interpreting the statute. It's not a vicarious liability statute. Are we in agreement about that? Okay, it's the first time I thought of it in that context. I guess it would have to depend on how you would frame the role of state and the affirmative obligations that the state retained for itself versus those that it delegated to the local government. And then in that context, when the state has acted here, sometimes in accepting its supervisory function and other times as just acting in an advisory capacity, then where it fails to actually perform its supervisory and corrective functions, then I would argue that it could have vicarious liability. Well, that's what your argument does seem to be, a vicarious liability case. And also direct liability, because they have an affirmative obligation to undertake the actions that they failed to take in this case. All right, anything else? No. I think we're good. All right, thank you. Thank you. Unless the court has further questions, I know I went long earlier, so I can waive rebuttal. I do not. Okay, thank you very much. Thank you. Thanks to both of you for your helpful briefs and oral arguments. We really appreciate it. The case will be submitted.